FILED
2009 Mar-31 AM 11:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

EDDIE L. TRAVIS,

_____Plaintiff,

vs.                                                          CASE NO. CV-08-J-1774-W

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

    Defendant.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff applied for Disability Insurance Benefits and Supplemental Security Income due to major depressive disorder, schizophrenia, paranoid type, alcohol dependence, and cocaine dependence (R. 137, 181). The plaintiff's alleged disability onset date is April 1, 2004 (R. 28).

On appeal, the plaintiff argues that the decision of the Administrative Law Judge ("ALJ") should be reversed because it contains errors of law and is not supported by substantial evidence. Plaintiff's Memorandum at 3.

The court has considered the record and the briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED**.

## Factual Background

The plaintiff was born on January 20, 1957 (R. 362). The plaintiff has a high school education and approximately seven years of college, but he did not earn a degree (R. 362). He has past relevant work as a groundskeeper (semi-skilled and medium exertion), a security guard (semi-skilled and light exertion), a picketer for a labor union (unskilled and light exertion), a cashier (unskilled and light exertion), and a teacher's aide (skilled and light exertion) (R. 380). The plaintiff has lived in various homeless shelters since his disability onset date of April 2004 (R. 375). The plaintiff testified that he has been on medication for such a long period that he is unable to function (R. 376).

The plaintiff has multiple medical records diagnosing his symptoms, with several medical sources concluding that the plaintiff is disabled. In August 2004, Dr. Robert Riesenberg, a treating source, issued a letter stating that the plaintiff was diagnosed with schizophrenia, paranoid type (R. 138). He opined that due to this disorder, the plaintiff "is unable to function over time in any job capacity," and "[s]ince his discharge on 08/13/04, he has been unable to maintain any kind of employment" (R. 138). In November 2004, Dr. Donald Bowling, a psychologist, performed a consultative examination on the plaintiff (R. 139). The exam noted that the plaintiff began using drugs and alcohol at the age of 16 (R. 140). He tried to

commit suicide in 1995 (R. 140).  Dr. Bowling stated that the plaintiff suffered from depression along with alcohol and cocaine dependence (R. 143).  He found that due to the combination of the plaintiff's problems, he would likely decompensate if faced with a stressful situation (R. 143).

In April 2005, Dr. Riesenberg performed a Medical Assessment of Ability to do Work Related Activities (Mental) on the plaintiff (R. 163).  He provided that the plaintiff had poor or no ability to relate to co-workers or deal with the public (R. 163). He also found that the plaintiff had poor or no ability to interact with a supervisor, deal with work stress, function independently, maintain attention concentration, and carry out complex, as well as detailed but not complex, instructions (R. 164).  Dr. Riesenberg also found that the plaintiff had poor or no ability to behave in an emotionally stable manner and relate predictably in social situations (R. 165).  Dr. Riesenberg listed the plaintiff's symptoms as: anhedonia, sleep disturbance, psychomotor retardation, decreased energy, difficulty concentrating or thinking, hallucinations, delusions, or paranoid thinking, and inflated self-esteem (R. 166-67). He stated that the plaintiff suffered four or more repeated episodes of decompensation, and had marked limitations relating to: activities of daily living, maintaining social functioning, and concentration, persistence or pace resulting in failure to complete tasks in a timely manner (R. 168).  Dr. Riesenberg concluded that

the plaintiff's condition was disabling, preventing him from engaging in gainful employment (R. 169).

Dr. Joe Browning, a treating physician, performed a Medical Evaluation (Affective Disorders) on the plaintiff in March 2007 (R. 320). The plaintiff's symptoms included anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, decreased energy, guilty or worthlessness feelings, difficulty concentrating or thinking, thoughts of suicide, hallucinations, delusions or paranoid thinking, and involvement in activities that have a high probability of painful consequences which are not recognized (R. 320-21). Dr. Browning stated that the plaintiff has a long history of mental illness, "requiring hospitalization 6 [to] 7 times for decompensation," and "limited ability to cope with stress or change" (R. 323). Dr. Browning found that the plaintiff experiences marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (R. 322). He stated that the plaintiff is seriously limited in his ability to relate to co-workers, deal with work stress, and maintain personal appearances (R. 324-26). Dr. Browning concluded that the plaintiff's condition was disabling, preventing him from engaging in gainful employment (R. 323).

In September 2007, Dr. Shanthi Mogal, the plaintiff's treating psychiatrist, stated that his "diagnosis of Psychotic disorder NOS exists separate and apart from any history of substance abuse. In other words, Mr. Travis is disabled by this mental condition even when he is not using drugs and/or alcohol" (R. 353). Medical records from other treating sources further illustrate the plaintiff's symptoms. In September 2003, the plaintiff was treated at Grady Health System Emergency Care Center for suicidal ideation (R. 127-28). The plaintiff was diagnosed with identical symptoms in July 2004 at Grady, also noting the plaintiff's depression, bipolar disorder, and schizophrenia (R. 137). The plaintiff was admitted to Northport Medical Center in February 2006 due to auditory hallucinations and suicidal ideation (R. 248). During this visit he was admitted to the psychiatric intensive care unit and placed on precautions for suicide, aggression, psychosis, and alcohol withdrawal (R. 248-49). When the plaintiff was discharged he was diagnosed with schizoaffective disorder and alcohol abuse (R. 249). His Global Assessment of Functioning ("GAF") score was 40[1] (R. 249).

## Standard of Review

The court's role in reviewing claims brought under the Social Security Act is

---

[1] *See* Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR. A GAF of 40 indicates "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."

a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for 'despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of [the] decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## Legal Analysis

In the case before this court, the ALJ determined that the plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to low stress work that does not require a significant amount of public contact" (R. 19). The ALJ found that the plaintiff could not perform any past relevant work, but there were jobs in the

national economy that the plaintiff could perform, including nut sorter, laborer, and garment sorter (R. 23-24).

This court finds that the record does not support this decision. The court finds that the ALJ did not properly consider the medical evidence in the record, as well as three treating physicians documenting the plaintiff's disabling mental impairments that exist despite any drug or alcohol abuse. *See* 20 C.F.R. § 404.1535; *Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998) ("Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too."). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

In finding that the plaintiff was not disabled, the ALJ stated that the plaintiff's "entire mental problems are based on years of substance abuse" (R. 23). He further found that if the plaintiff stayed sober for a few years, he could work a low stress job that does not require much public contact (R. 23). This conclusion is not supported by substantial evidence. The plaintiff's medical records provide ample evidence of a longstanding mental disability unrelated to the plaintiff's substance abuse. Dr. Riesenberg's August 2004 letter stated that the plaintiff "is unable to function over

7

time in any job capacity," and "[s]ince his discharge on 08/13/04, he has been unable to maintain any kind of employment" (R. 138).  The plaintiff was diagnosed with schizophrenia, paranoid type (R. 138).  In April 2005, Dr. Riesenberg performed a Medical Assessment of Ability to do Work Related Activities (Mental) on the plaintiff (R. 163).  He listed the plaintiff's symptoms as: anhedonia, sleep disturbance, psychomotor retardation, decreased energy, difficulty concentrating or thinking, hallucinations, delusions, or paranoid thinking, and inflated self-esteem (R. 166-67).  He stated that the plaintiff suffered four or more repeated episodes of decompensation, and had marked limitations relating to: activities of daily living, maintaining social functioning, and concentration, persistence or pace resulting in failure to complete tasks in a timely manner (R. 168).  The ALJ did not explain the weight given to the opinions of Dr. Riesenberg.  When assessing medical evidence, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons for his decision to accept or reject the evidence.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  However, Dr. Riesenberg's opinions should be given appropriate weight, since he treated the plaintiff once a month since June 22, 2004 (R. 166). *Id.* (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)).

    Dr. Browning performed a Medical Evaluation (Affective Disorders) on the

plaintiff in March 2007 (R. 320).The plaintiff's symptoms included anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, decreased energy, guilty or worthlessness feelings, difficulty concentrating or thinking, thoughts of suicide, hallucinations, delusions or paranoid thinking, and involvement in activities that have a high probability of painful consequences which are not recognized (R. 320-21). Dr. Browning stated that the plaintiff has a long history of mental illness, "requiring hospitalization 6 [to] 7 times for decompensation," and "limited ability to cope with stress or change" (R. 323). Dr. Browning found that the plaintiff experiences marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (R. 322). He stated that the plaintiff is seriously limited in his ability to relate to co-workers, deal with work stress, and maintain personal appearances (R. 324-26). Dr. Browning concluded that the plaintiff's condition was disabling, preventing him from engaging in gainful employment (R. 323). The ALJ gave no weight to Dr. Browning's restrictions, stating that such restrictions are based on assumptions that do not apply (R. 23). The ALJ did not explain what assumptions he was referring to. This is an insufficient reason for rejecting the opinion of a treating physician.

In September 2007, Dr. Mogal stated that the plaintiff's "diagnosis of Psychotic disorder NOS exists separate and apart from any history of substance abuse. In other words, Mr. Travis is disabled by this mental condition even when he is not using drugs and/or alcohol" (R. 353). The ALJ did not explain the weight given to Dr. Mogal's diagnosis. Dr. Mogal was the plaintiff's treating psychiatrist at Grady Health System, the plaintiff's long-time treating facility (R. 353). Instead of merely ignoring the opinion, the ALJ should have at least recontacted Dr. Mogal in order to determine what the plaintiff's level of functioning was due to his psychotic disorder which exists separate and apart from substance abuse. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record.")(citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)); 20 C.F.R. §§ 404.1512(e), 416.912(e). Further, the ALJ is required to afford considerable weight to the opinion of the plaintiff's treating physician absent good cause for not doing so. *Sharfarz*, 825 F.2d at 280.

Other treating sources corroborate the previously discussed diagnoses. In September 2003, the plaintiff was treated at Grady Health System Emergency Care Center for suicidal ideation (R. 127-28). The plaintiff was diagnosed with identical symptoms in July 2004 at Grady, also noting the plaintiff's depression, bipolar

disorder, and schizophrenia (R. 137). The plaintiff was admitted to Northport Medical Center in February 2006 due to auditory hallucinations and suicidal ideation (R. 248). During this visit he was admitted to the psychiatric intensive care unit and placed on precautions for suicide, aggression, psychosis, and alcohol withdrawal (R. 248-49). When the plaintiff was discharged he was diagnosed with schizoaffective disorder and alcohol abuse (R. 249). His Global Assessment of Functioning ("GAF") score was 40 (R. 249). Given the ample evidence in the record demonstrating the plaintiff's mental disability, aside from the plaintiff's drug or alcohol issues, the ALJ's conclusion that the plaintiff is not disabled is against the substantial weight of the evidence. *See* 20 C.F.R. § 404.1535. This court finds that because the plaintiff is disabled, he is entitled to benefits as of his alleged onset date, April 1, 2004.

## Conclusion

"When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Secretary should have made." *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D. Fla. 1984) (citing *Gardner v. Smith*, 368 F.2d 77, 86 (5th Cir. 1966); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972)). Because the plaintiff is entitled to a finding of disability, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED**. This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in

accordance with this Opinion.

    **DONE** and **ORDERED** the 31st day of March 2009.

                                          INGE PRYTZ JOHNSON
                                          U.S. DISTRICT JUDGE